455 So.2d 1374 (1984)
Emile L. TURNER, Jr.
v.
Helen Ruth Gubbels TURNER.
No. 84-C-0557.
Supreme Court of Louisiana.
September 10, 1984.
Rehearing Denied October 4, 1984.
*1375 Thomas M. Young, New Orleans, Harry R. Cabral, Jr., H. Craig Cabral, Cabral & Cabral, Metairie, for plaintiff-applicant.
A.D. Freeman, Satterlee, Mestayer & Freeman, New Orleans, for defendant-respondent.
DIXON, Chief Justice.
Emile and Helen Turner were divorced in January, 1980. The divorce decree gave custody of the couple's minor children, including the twin boys who are now nearly eight years old, to the mother. Since that time, numerous rules have been filed in the trial court which sought to change the original custody order; many changes have, as a result, been made. The most recent order, dated April 27, 1983, provides for joint custody of the boys for one year periods, alternating each year on July 15. The non-custodial parent is granted holiday and other visitation privileges. The father appealed the joint custody order and the court of appeal affirmed the ruling of the trial court. Turner v. Turner, 445 So.2d 35 (La.App.1984). From that affirmance the father applied for a writ of certiorari, which we granted. Turner v. Turner, 449 So.2d 1342 (La.1984). A motion for a stay of the April 27 judgment, filed by the motherthe custodial parent at the time of oral argument before this courtwas filed in this court immediately before argument, and was denied. We reverse.
On March 22, 1979 Emile Turner filed a petition for separation from Helen, his wife of twenty years. The husband left the marital domicile some time earlier, and listed in his petition several reasons for his leaving, including "constant criticism regarding the handling of the children." In August, 1979 plaintiff supplemented his petition, and, alleging that he and his wife had lived separate and apart for more than one year, converted the prayer into one for divorce. The judgment of divorce was rendered in January, 1980.
Later, following the divorce, Helen Turner was judicially committed to a psychiatric hospital in Dallas, Texas; since her release she has been taking medication and undergoing regular therapy to help control her condition. Emile has remarried, and now lives with his new wife and her children by a former marriage.
From the time of the filing of the original petition the parties have been in court frequently. Emile Turner has filed several rules for contempt against Helen, alleging, inter alia, that Helen harassed him and his employees at his place of business, that she improperly moved back into the community domicile, and that she violated several court orders relating to visitation rights and child custody.
Of importance in this case is the history of the child custody arrangements which have been established by the trial court. Initially, after the filing of the original petition for separation, the parties entered into a consent judgment whereby the mother was given temporary custody of the minor children. The judgment of divorce made the custody permanent, subject to the visitation rights of the father. After Helen's commitment to the mental facility, the father obtained provisional custody of the children during her stay at the institution. Later, while the mother remained at the institution on a voluntary basis, the father moved to obtain permanent custody of the children. The request was granted. Upon her release, the mother was granted visitation *1376 rights by the fathernot by court orderbut the father later charged that the mother violated her privileges. The court, in the summer of 1981, fixed the mother's visitation rights. As part of that order, Helen Turner was allowed to visit the children between the hours of 9:00 a.m. and 6:00 p.m. at the former marital domicile, which, by the same court order, was exclusively the father's residence. Shortly thereafter, the father sought a restraining order against the mother; she had returned to the former marital domicile and refused to leave, keeping up a pretense of maintaining a family environment. The court ordered Helen to vacate the premises. Later in 1981, another rule for contempt was filed against the mother, claiming that she continued to remain at the house, in violation of the earlier court order.
The mother sought to regain the custody of her children by filing a rule in January, 1982. The trial court, with a new judge sitting, held the matter open pending an environmental investigation. The report was completed, but because the trial judge chose not to let the parties examine it, it was not made a part of the record.
In April, 1982 the father remarried, and he and his children took up residence with his new wife and her children by a previous marriage. In July the mother sought a temporary change in custody pending a final decision on the request for a permanent change. In response, the father again sought to establish the mother's visitation rights. The court ordered that the mother could visit the children on alternate weekends, and between 3:00 and 7:00 p.m. on Tuesdays and Thursdays. In November, 1982 the judge rendered a final judgment on the January request, denying the mother's request for custody. In December, the judge ruled on the visitation issue, and increased the mother's visitation rights to include all night on Tuesdays and Thursdays.
In the early part of 1983 the father filed a rule to abolish the overnight visitation during the school year which had been granted to the mother, arguing that such activity was detrimental to the children. The mother answered the rule with one of her own: pursuant to La.Acts 1982, No. 307, § 1, the mother sought a judgment of joint custody of the children. In March the trial court, with yet another judge sitting in the case, granted joint custody to the parents. The basic award was that the father would have physical custody of the children during the school year, and the mother would have custody during the summer months. Both parties applied for a new trial, which the trial court granted, stating that a new trial would have been granted in the matter of its own motion. As a result of the new trial, the judge modified his judgment. The April, 1983 custody award continues the joint custody arrangement, but instead of splitting the year into two parts, the trial judge awarded physical custody of the children to the parents for alternating one year terms, commencing with July 15, 1983. Each parent thereafter would have physical custody of the twins for a full year, subject to the visitation rights of the other parent: three weekends each month, plus alternating holidays. It is from that custody award which the father appealed.
The court of appeal ruled that the trial court was correct in its judgment, and that it did not abuse its discretion in making such a custody award. From that judgment, the father alone sought writs from this court.
According to C.C. 157,[1] as amended, "[i]n all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children *1377 shall be granted to the parents in accordance with Article 146." Article 146[2] provides:
"A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly. The court shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order, or the parents individually or in concert may submit a custody implementation plan to the court prior to issuance of a custody decree. A plan of implementation shall allocate the time periods each parent shall enjoy physical custody of the children and the legal authority, privileges and responsibilities of the parents. The plan may also include such considerations as the following:
(a) Designation of the child's legal domicile.
(b) Rights of access and communication between the respective parents and the child or children.
(c) Child support....
(d) Any other matter deemed in the best interest of the child or children.
(2) To either parent. In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and shall not prefer a parent as custodian because of that parent's sex. The burden of proof that joint custody would not be in a child's best interest shall be upon the parent requesting sole custody.
(3) If to neither parent, to the person or persons in whose home the child has been living in a wholesome and stable environment.
(4) To any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment.
. . . . .
C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
(1) However, the parents may agree to any award of custody to one parent.
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

*1378 (f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute.
(3) For the purpose of assisting the court in making a determination whether an award of joint custody is appropriate, the court may direct that an investigation be conducted.
D. For purposes of this Article, `joint custody' shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2). Joint custody shall also mean that the parents shall enjoy the natural co-tutorship of such children in accordance with Article 250, subject to the plan of implementation effected pursuant to Paragraph A of this Article. Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents. An award of joint custody obligates the parties to exchange information concerning the health, education, and welfare of the minor child; and, unless allocated, apportioned, or decreed, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities, and authority.
E. Any order for joint custody, or any plan of implementation effected pursuant to Paragraph A of this Article, may be modified or terminated upon the petition of one or both parents or on the court's own motion, if it is shown that the best interest of the child requires modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order.
F. Any order for the custody of a minor child of a marriage entered into by a court in this state or in any other state, subject to jurisdictional requirements, may be modified at any time to an order of joint custody in accordance with the provisions of this Article.
G. A custody hearing may be held in private chambers of the judge.
H. Notwithstanding any other provision of law, access to records and information pertaining to a minor child, including but not limited to medical, dental, and school records, shall not be denied to a parent because the parent is not the child's custodial parent."
Issue has been taken with the applicability of C.C. 146 to the present case, since the judgment of divorce was rendered prior to the effective date of the amended article. Reference to C.C. 146(F),[3] however, resolves the matter. That subsection provides that any existing custody orders may be modified to joint custody orders under the new article. Since the case before this court involves a request for, and judgment of, joint custody, the matter is governed properly by the amended article. See also C.C. 157.
The appropriate standard to be applied by the trial court in determining the custody of a child of a dissolved marriage is that of the "best interest of the child." This standard is repeated throughout article 146, and is the sole criterion to be met in making the award.
*1379 The trial judge sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child's emotional, physical, material and social well-being and health which are the judge's very purpose in child custody cases. He must protect the child from the harsh realities of the parents' often bitter, vengeful, and typically highly emotional conflict. The legislature has mandated that the judge shall look only to the child's interests.
In furtherance of this important goal, the court has been vested with broad and independent powers. It may, for example, order that an investigation be conducted into the home lives of the parties, the psychological health of the child, or into any other factor which the judge deems to be important in his determination of the child's best interest. C.C. 146(C)(3). In this way, the court can fulfill its obligations to the child.
The legislature also established a list of preferred custodial arrangements: to both parents jointly, to either parent, to the person in whose home the child has been living, or to any other person deemed appropriate by the court, C.C. 146(A)(1)-(4), provided that any award to a non-parent can be made only when there has been a finding that continued parental custody would be detrimental to the child. C.C. 146(B). Whatever choice is made by the trial court, the determination must be made in the child's best interest.
The legislature, furthermore, went beyond the mere establishment of a guiding list, and established the rebuttable presumption that joint custody arrangements would be in the child's best interest. C.C. 146(C). This presumption has caused some confusion. Some lower courts seem to believe that the article requires granting joint custody. Such is not the case; the article clearly provides that there is only a presumption in favor of joint custody, and that it may be rebutted upon a proper showing that a different arrangement is in the child's best interest. Such a showing now must include a consideration of eleven specific, enumerated factors, plus any "other factor" which the trial court deems to be relevant. C.C. 146(C)(2)(a)-(l).[4] Article 146 provides further that "the burden of proof that joint custody would not be in the child's best interest shall be on the parent requesting sole custody." C.C. 146(A)(2). This provision does not create any extraordinary burden on the party requesting sole custody.
As in any matter in which there is a rebuttable presumption, the burden rests with the party challenging the presumption to convince the fact-finder that his proposed conclusion is more correct than the presumed one. A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary. See 9 J. Wigmore, Evidence § 2491(3) (3d ed.). "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear." Lincoln v. French, 105 U.S. (15 Otto) 614, 617, 26 L.Ed. 1189 (1881).
The article 146 presumption only compels the judge to award joint custody in those cases where other things are equal; or where there is insufficient evidence to rebut the presumption; or whenever neither parent alone would be able to manage a sole custody arrangement, and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion. In such a case, it becomes necessary for the other party to reestablish the propriety of the presumption's conclusion.
There is but one element upon which the trial court cannot base its decision. Article 146(A)(2) expressly forbids the judge from "prefer[ring] a parent as the custodian because of that parent's sex."
*1380 In the present case the custody of the children has been the subject of much litigation. Since the initial filing for a separation by the father, custody has gone from the mother's provisional custody, to her permanent custody, to the father's temporary custody, to his permanent custody, to two versions of joint custody. As was brought out in oral argument, the mother has filed yet another rule seeking to change the custody arrangement. Visitation rights have gone from the father's rights on alternating weekends and holidays, to the mother's alternating weekends and holidays plus Tuesday and Thursday nights, to the present three weekends per month plus alternating holidays for the non-custodial parent, with a broad spectrum of variations in between. The court orders relating to custody and visitation have been the subject of rules for contempt and injunction.
Aside from the physical custody of the children, the parents also have been unable to agree on how the children should be brought up. The amount of time that each thinks should be spent with the children varies greatly. The tutoring of one of the boys has become a point of contention, with the mother thinking that she should do it herself, and the father hiring a trained instructor. There also are apparent differences in the discipline of the children: the mother cleans up after her children, but the father makes them clean up after themselves.
Based on the extensive history of the litigation in this matter, as well as the bases for much of the litigation, it is clear that the parties are unable to settle their differences amicably, or to insulate the children from their battles. The conflicts between the father and the mother run deep, and it is doubtful that any order of any court could quell entirely those conflicts. Unfortunately, the children have been caught in the crossfire. It is for this very reason, when the parents are of such divergent views and lead such different lives, that the legislature mandated that the court look only to the child's best interest, and not to whatever interests the parents may have. This type of case is precisely one of those "other factors" within the scope of C.C. 146(C)(2)(l). The child is an innocent, unrepresented third party in divorce cases, and should not become a victim of the battle, nor a part of the community to be partitioned.
Looking at the record as a whole, it can be established that the presumption in favor of joint custody has been rebutted, and it is clear that the children's best interest cannot be served by a joint custody arrangement, or by allowing such extensive visitation privileges as to amount to joint custody. The twin boys are in their formative years right now, and it is essential that they have a single authority upon which they can base their behavior and development. Since the parents practice such differing views on the rearing of these two boys, and are, apparently, unable or unwilling to share the responsibilities inherent in raising the children, it is wholly unacceptable to allow them to share the duty. They lack completely any spirit of cooperation, and a continued joint custody arrangement would serve only to stunt the development of these children.
It is this sort of situation for which the court must be alert. In its capacity as a lookout for the child, the court is obligated to consider additional factors such as have been relied upon by this court in this case. The trial court cannot rest on the legislative presumption to solve its case, but must become an active participant in the case. None of this is to say that the trial court should disregard the evidence presented by the parties, or that the trial court should meddle in the affairs of the parties. It also is not intended that parties should refrain from pursuing their legal rights in court for fear that the mere act of litigating will cause them to lose custody. It is intended only that the parties attempt, as best they can, to insulate the children from the battle, and that the children not be used as trading cards between the parents. So long as the children are the prime concern of the parties, nothing in this opinion should restrict their access to the courts in *1381 their pursuit to retain or attain custody of their children, which is a natural pursuit of any loving, caring parent. The important thing is not to abuse the children by dragging them constantly through the court system, when there has not been a real change in circumstances sufficient to justify a change in custody. The trial courts should discourage such abuses, and should consider such constant bickering as a sign of conflict between the parents in which one or both of the parties attempts to use the children to further his own wants or needs.
In the present case the court must determine which of the two parentswithout regard for the gender of the parent, and without any regard for the "needs" of the parentscan serve better the best interest of the children. This court recognizes that the parties may challenge any custody decree in a future proceeding, but until such time as the parties can demonstrate their willingness and ability to serve the children in a unified manner, and put their own interests aside, any joint custody award would be in vain.
The judgment complained of, therefore, is vacated, and it is ordered that the case be remanded to the district court for further proceedings to determine which of the two parents is better suited for serving the best interest of the children. The court is ordered not to render a joint custody decree or extensive visitation privileges to the non-custodial parent, absent a clear showing by both of the parties that they are willing and capable of serving the children to the children's best interest. Pending that determination, provisional custody is awarded to the father. It is ordered further that the court, in its deliberations, not give undue weight to the fact that the children lived with the mother for one year, and have recently begun their one year term with the father. The allocation of costs will await the judgment of the court below.
DENNIS, J., dissents in part and concurs in part with reasons.
LEMMON, J., concurs.
DENNIS, Justice, concurring in part and dissenting in part.
I agree that the amendments to Civil Code articles 146 and 157 govern this case, and that the presumption that joint custody is in the best interests of the children has been rebutted. I find more persuasive authority for determining the presumption has been rebutted in article 146(C)(2)(j), rather than in the amorphous "[a]ny other factor" the former factor being "[t]he willingness... of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent."
However, I respectfully dissent from the majority's remanding of the case for the limited purpose of determining which parent's exclusive custody would be in the best interests of the children. We should not so tie the hands of the trial judge, who is closest to the parties and their unique circumstances. The trial court should have all the options available, including joint custody, in resolving this dispute. It may appear in the light of further proceedings that a different joint custody arrangement is in the best interests of the children despite our conclusion that the presumption to that effect has been rebutted, because the parties may be able to "reestablish the propriety of the presumption's conclusion." (majority opinion at p. 1379). It is possible that the trial court's present joint custody decree, requiring the parents to split physical custody on a yearly basis, contributed to the parties' bickering and unwillingness to cooperate in the joint custody arrangement.
NOTES
[1] Prior to the 1981 amendment of C.C. 157, that article provided that custody could be given to either parent, but regard could not be taken of the parent's gender. In 1981 joint custody by agreement was introduced. Both amendments established that the child's best interest was the standard to be applied. The 1982 amendment omitted the specific legal rules, but instead made C.C. 146 applicable to divorce and separation cases. Since the substantive provision, "best interest of the child," has been retained in C.C. 146, this court will apply the new C.C. 157 to this case, considering that the recent amendments are stylistic and not substantive.
[2] Article 146 was made applicable to divorce and separation cases only in January, 1983, through the 1982 amendment of article 157. La.Acts 1982, No. 307, § 1. Prior to that time, C.C. 146 applied only to child custody pendente lite. The 1982 amendmentthe law which was applied by the trial court in rendering its judgment sub judicecreated the rebuttable presumption in favor of joint custody, unless "(2) The court finds that joint custody would not be in the best interest of the child." In 1983 the article was amended again, this time with the legislature enunciating a twelve point checklist of factors to be considered in deciding whether the presumption has been rebutted. Again, the substantive provisions of the law were not changed: the best interest analysis still applied and joint custody still was presumed. The checklist was added as clarifying legislation to provide guidance for the courts, and can be applicable in the present case.
[3] This provision was included in the 1982 amendment, and so was operative at the time of the rendering of the April 27, 1983 joint custody decree.
[4] Prior to the 1983 amendment, the checklist did not exist. See footnote 2.