458 So.2d 662 (1984)
McKinley Dewayne LONG, Plaintiff-Appellant,
v.
Tracy Johnson LONG, Defendant-Appellee.
No. 83-1022.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for plaintiff-appellant.
Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for defendant-appellee.
Before GUIDRY, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
These litigants are the parents of two children, ages four and five, and they have fought over custody of the children in three hearings taking many days during the first year following their separation. The latest courtroom engagement consumed five days and resulted in a judgment of joint custody. The father, McKinley Long, now appeals, contending the trial judge should have found the mother, Tracy, unfit, and that the court should have removed the children from her sole custody, and given sole custody to him.
Based on the recent decision of the Louisiana Supreme Court in Turner v. Turner, 455 So.2d 1374 (La.1984), we agree with appellant that joint custody was not the wisest custodial arrangement given the circumstances of this case, and we set aside that order. However, we cannot agree that appellant is entitled to sole custody; our reading of the trial judge's findings of fact and excellent reasons for judgment, suggests to us that he may have favored retention of sole custody by the mother, but that he was dissuaded from that decision by a mistaken belief that a joint custody ruling was mandated by the presumption established by Civil Code art. 146. Since the joint custody presumption of Article 146 has now been clarified by the Supreme Court in Turner, supra, we shall remand this case, as was done in Turner, to enable the trial court to decide which parent will have sole custody, if the court *663 thinks that is in the best interest of the children.
In Turner the Supreme Court said:
"The Legislature ... established the rebuttable presumption that joint custody arrangements would be in the child's best interest. C.C. 146(C). This presumption has caused some confusion. Some lower courts seem to believe that the article requires granting joint custody. Such is not the case; the article clearly provides that there is only a presumption in favor of joint custody, and that it may be rebutted upon a proper showing that a different arrangement is in the child's best interest...."
The court explained that once a party seeking to attain or retain sole custody shows that custody in one parent is in the best interest of the child, the presumption is destroyed. The court also said that trial courts do not complete their judicial function by simply resting on the legislative presumption to solve the case, but must become active participants in the case, and pursue actively that course of conduct which will be of the greatest benefit to the child.
The Court in Turner examined the history of the extensive litigation in that case, and observed that the parties were unable to settle their differences amicably, or to insulate the children from their battles, and that these deep-running conflicts between the father and the mother could doubtfully be quelled by any court. The children were caught in the cross fire of these conflicts. Noting that this type of case exemplified an "other factor" within the scope of Civil Code art. 146(C)(2)(l), the court concluded that the presumption in favor of joint custody had been rebutted, because the best interest of the children could not be served by a joint custody arrangement. It then remanded the case to the district court to determine which of the two parents was better suited for serving the best interest of the children.
Similarly, in our present case, the relationship between these parents has been a continuous conflict. The marriage itself did not last long. Married in 1979, the couple separated in April 1982 after these children were born. The separation date marked the beginning of a litigious year of charges and recriminations, full of pleadings, numerous hearings, and many days of trial testimony, much of which was an attack on the morals of one parent by the other. Bent on finding fault, the husband entered into an unusual contract of employment with a team of private investigators: the contract provided for a generous fee, but only if the surveillants unconvered evidence of the mother's wrongdoing. The whole purpose of the last voluminous custody hearing was to use this evidence to establish the unfitness of the mother, Tracy, and take custody from her.
That evidentiary onslaught succeeded only in establishing what Tracy already admitted, i.e., a relationship with one Winfred Holt. Other alleged sexual encounters of the mother were found by the trial court to be "wholly unsubstantiated", the evidence being, in the court's further words, "either totally lacking or extremely tainted." The relationship with Holt did not adversely affect the children, according to the trial judge, who made several specific findings of fact that Tracy was a good mother, and that he could find no fault with the care she had provided the children.
The court ruled, but McKinley has been unable to accept these findings of the trial court. In his joint custody plan filed in the record, as ordered, in August 1983, after the judgment ordering joint custody was handed down, he made the observation, concerning the moral fitness of Tracy, that she was "completely devoid of moral values" and "[g]iven to public displays of base and low gestures." Of her mental and physical health, he said she was "[i]mpulsive and irrational", and "spiked by temper tantrums, cursing fits and generally a lack of social control." He said he would try to make joint custody work, but doubted it would work because of Tracy.
This attitude of continuing conflict presages, at least on McKinley's part, little hope that these parents can insulate their *664 children from their private animosities. For joint custody to work, there must be a willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. Civil Code art. 146(C)(2)(j). Neither parent in this case sought joint custody, McKinley does not want it now, and, although Tracy did not appeal, she contended at the trial level that she should retain sole custody. Considering the litigious propensities of this couple, it is doubtful that any court can quell their conflicts sufficiently to make a joint custody arrangement serve the best interest of the children.
We believe that the trial court in the present case was troubled by the general uncertainty surrounding the joint custody presumption which the Turner case has now clarified. The trial court found that "both parents are good parents, and that they care for and love their children very much." (Similar language and reasoning was employed by the Court of Appeal in Turner, 445 So.2d 35, 38 (La.App. 4th Cir. 1984)). For this reason the trial court stated he was "required to follow the mandate of Civil Code Article 146." This resulted in his award of joint custody. We believe it will come as a relief to the trial court that Turner enables us to remand this case for his further consideration.
For these reasons, we remand, with instructions to the trial court to reconsider its custody judgment herein in the light of the decision in Turner, supra, and to conduct such further proceedings, or hear such additional arguments, as in its discretion it deems necessary in the case, and thereafter to determine which of the two parents is better suited for serving the best interests of the children. We do not wish to foreclose the authority of the district court, on remand, to render a joint custody decree, if in fact the court considers that is best, but we feel constrained to add the caution, as was done in Turner, that the court not render a joint custody decree absent a clear showing by both of the parties, that they are willing and capable of serving the children to the children's best interest.
Pending that determination on remand, provisional custody is awarded to the mother. The allocation of costs will await the judgment of the court below.
REVERSED AND REMANDED.