461 So.2d 469 (1984)
Sara GOLDMAN, Wife of Allen James Logue
v.
Allen James LOGUE.
No. 84-CA-76.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1984.
Writ Denied February 4, 1985.
*470 Ferdinand J. Kleppner, Metairie, for plaintiff-appellant.
Bernard M. Plaia, Jr., Metairie, for defendant-appellee.
Before GAUDIN, GRISBAUM, and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal by Sarah Goldman, plaintiff-appellant and former wife of Allen Logue, defendant-appellee, from a judgment denying her petition for sole custody, or in the alternative for joint custody of the nine year old son of their prior marriage. Because we find no abuse of the trial court's discretion in refusing to award either sole custody to the mother, or joint custody, but rather permitting the child to remain in the sole custody of his father with visitation rights to his mother, we affirm.
In February of 1980, the parties were divorced, and the mother was granted sole custody of the one child of the marriage.
In June of 1981, the father sought, and was granted, sole custody of the child on the apparent grounds that he had remarried and could provide a more stable home for the child, while the mother was then living a somewhat chaotic and unsettled life. As a condition of this award, the father's second wife, Lynette Campbell, was ordered to quit her job in order to provide 24 hour supervision of the child. Visitation privileges of every other weekend, alternating holidays, and six weeks during the summers, were granted the mother.
In the early part of 1982, the mother initiated contempt proceedings against the father claiming that he was violating her visitation privileges. The father responded with a rule to modify the mother's visitation rights alleging that the mother was unduly interfering with the child's organized sports activities during her periods of visitation. While these matters were pending, the father also filed a rule for child support. The mother responded by filing a rule for custody, alleging that she was remarried to Howard Stembel, and could not provide a stable environment for the child. In May 1982, after a full trial on the merits of above matters the trial court dismissed the mother's rule for custody, and ordered her to pay $225 per month in child support. It appears that the problems over the mother's visitation rights were left for resolution by the parties.
In early June of 1983, the mother filed the present action, again seeking to be granted sole custody, or in the alternative, joint custody, and to have child support payments eliminated or reduced. The father responded by filing a rule to make executory past due child support, claimed to be over $1200. On June 24, 1983, the mother filed a motion to specify visitation rights for the remainder of that summer. After a hearing on this last motion, the trial court rendered a judgment specifying the dates and times during which the mother would have visitation. He also specified that on certain of those days, she would see to it that the child would be brought to baseball practice and that he would be permitted to participate in a baseball tournament.
A full hearing on the change of custody rule was held in August and September of *471 1983. During the course of that proceeding, the trial judge interviewed the child in chambers, but refused either to permit the attorneys to be present or to have a transcript made of the interview. On September 28, 1983, judgment was rendered denying the mother sole custody as well as joint custody. No judgment was rendered on the rule for past due alimony, and apparently that matter is still pending. Since the filing of this appeal, the mother has filed yet another rule for determination of visitation privileges.
The mother urges two errors on the part of the trial court. Her first contention here is that because no transcript appears in the record of the trial judge's interview with the child, appellate review is impossible. Her second contention is that the trial court erred in concluding that the statutory presumption in favor of joint custody was rebutted by the father.
As to the absence of a transcript of the trial judge's interview with the child, we do not find that relevant. We have carefully reviewed the court's reasons for judgment, and find nothing therein that indicates any reliance on the interview. Moreover, each of his findings of fact is amply supported by evidence and testimony which does appear in the record, as will appear in more detail below. This allegation is thus without merit.
The mother's second allegation, that the presumption in favor of joint custody was not rebutted, is equally without merit.
Before turning to the record, we note that the standard to be applied by the trial court in custody disputes is that of the best interest of the child. Turner v. Turner, 455 So.2d 1374 (La.1984). Further, the presumption in favor of joint custody created by La.Civ.Code, art. 146, does not mandate joint custody, "but only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion," (i.e. that joint custody would be in the best interest of the child.) Turner v. Turner, supra. Finally, the standard of appellate review here is whether the trial court has clearly abused its discretion in fixing custody, Bordelon v. Bordelon, 390 So.2d 1325 (La. 1980).
With these principles in mind, we now address the facts. It is undisputed that the child's mental ability is in the 99th percentile of his age group. It is also agreed that he is active in, and enjoys organized sports, and plays on baseball, football and basketball teams. What is disputed is whether his intellectual abilities are being properly developed. The mother's main reason for seeking custody is that the father is allegedly overemphasizing sports in the boy's life and neglecting or improperly providing for his education.
In support of this allegation, the mother called as an expert Dr. Judith Roheim, a child psychiatrist who saw the child once. She testified that the child would benefit by being placed in a school for gifted children, and that the mother had informed her that she intended to enroll the boy in a private school specializing in the education of such children, if she were awarded custody. The doctor further stated that in her opinion academics were more important than sports, and that after interviewing the father she felt that he was overemphasizing sports. She also noted that the parents have entirely different life styles and value systems. Her recommendation to the court was that because in her opinion the mother could provide a better "schooling experience", a custody arrangement whereby the child would spend the school year with his mother, and the summers with his father was in the child's best interest. She also stated that this change of custody would not damage the child in any way.
In rebuttal, the father's expert, Dr. C.A. Cowardin, also a child psychiatrist, who had seen the child at least five times in the two years prior to trial, disagreed with Dr. Roheim's recommendations. In her opinion, the parents have demonstrated that they cannot cooperate to further their child's best interest, as is clear from their continuing resort to the courts. Further, she saw no indications that the child's intellectual development was being hampered *472 by his sports activities. This assertion was based on both her interviews with him and his school records which show him to be almost a straight A student. It was further clear from the school records that his academic performance has improved during the time that he has been in his father's custody, and that he is now in a program for gifted children at his present public school. Her recommendation to the court was that because he was doing so well in his father's custody, it would not be in his best interest to subject him to the disruptions and anxieties which any change in the present custody arrangement would necessarily entail.
It was also established at trial that the mother is in arrears in child support payments, and that she and her present husband have a marriage contract whereby he is not liable for such payments. Her husband testified that although he has made no effort to assist his wife in meeting her support obligations, and feels no responsibility to do so, if the child were to live with them he would help her in providing for his financial needs, obviously including private school tuition.
The father testified that he had no objection to a private school for gifted children, and had indicated this to the mother. He further stated that he told her he could not afford such a school and she made no offer of financial assistance. As to his attitude toward sports, he asserted that they should not be emphasized over academics, but that both were equally important in a child's development. He also noted that sports were a reward for proper behavior, and that recently the child had been refused permission to play on the soccer team for a season because he had forged his stepmother's name on a note sent to her by his teacher.
Obviously, then, the trial judge was forced with conflicting testimony and opinions as to how the child was progressing as well as how his best interest would be effected by a change in the present custody arrangement.
Our review of the judge's reasons for judgment does not disclose any abuse of discretion in resolving these issues. In those reasons he first stated that since being in his father's custody, the child has progressed both intellectually and physically, and is well rounded and happy. These findings are well supported by the testimony of Dr. Cowardin and the school records. Moreover, although Dr. Roheim stated, on the basis of one interview, that the child needed more intellectual stimulation and guidance, we see nothing erroneous in the trial court giving more credibility to the opinion of Dr. Cowardin who has seen the child over a number of years, especially in view of the excellent school records.
The judge next stated that the relations between the parents have been strained, and there has been a failure of communications and lack of amicable decision making. Again, the record supports this conclusion. The parties have had a continuing conflict over visitation rights which they have repeatedly called upon the courts to resolve. The mother claims she is unable to meet her child support obligations, yet asks for custody so she can enroll the child in a private school. The father is amenable to a private school, but claims he cannot afford the tuition, yet the mother has not offered to help with this expense. The mother's present husband is apparently willing to help with tuition, but only on the condition that the child comes to live with them. It is apparent to us, as it was to the trial court, that the inability of the parties to resolve their conflicts over such an essential aspect of the child's life as his education mitigates strongly against a joint custody arrangement.
The judge further stated that although the mother's basic complaint was that the child's intellectual potential was not being developed, he found no evidence to substantiate this assertion. The record supports this conclusion as well. The child's report cards and teacher evaluations show that he is doing extremely well in school. *473 The father reveals that at the time of the hearing he was enrolled in a program for gifted children in the public school system.
The trial court then concluded that the best interest of the child would not be served by any change of custody at this time. He emphasized that in reaching this decision he had considered the length of time, approximately two years, that the child has been in a stable, satisfactory environment, and the desireability of maintaining continuity. He also considered the favorable home, school and community record of the child. It is again obvious to us that he relied in part on Dr. Cowardin's testimony as to the unsettling effects of any change in custody and we have already determined that such reliance on a physician with longer contact with the child was not erroneous.
The mother urges, however, that because she meets many of the factors set forth in La.Civ.Code, art. 146(C)(2)(a-l), as considerations by the court in determining whether joint custody is appropriate, that it was error for joint custody to be denied. Particularly, she points out that she loves her child, is genuinely interested in his growth and education, and feels she could provide him with a proper home. While we do not doubt these assertions, the fact remains that the parents here do not appear to be able to put aside their differences and cooperate in matters affecting the child's well being. It is precisely this lack of a spirit of cooperation which the Louisiana Supreme Court has held to be one of those "other factors" within the scope of La.Civ.Code, art. 146(C)(2)(l). Turner v. Turner, supra. In the absence of such cooperation, and considering as well all other evidence in this case, we find that the trial court's decision to deny joint custody on the grounds that the best interest of the child would not be served by such an award was not a clear abuse of his discretion.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.