BOND, Judge Pro Tern.
This is an appeal by a mother from the granting of custody of twin two year old boys to their father.
THE FACTS
The parties were married in Denmark in February 1981. Mr. Nicklson was then twenty-four years of age, an enlisted member of the United States Army and had not previously been married. Mrs. Nicklson was a citizen of West Germany, age 29, the mother of one male child about 11 years of age from a previous marriage to a United States citizen, and the mother of another male child, about 8 years of age, born out of wedlock. The oldest child lives with his father in Indiana. The younger boy lived with the parties during their marriage and continued to live with Mrs. Nicklson at the time of trial.
Mr. Nicklson was transferred from Denmark to Fort Polk, Louisiana, and the parties came there in February 1982. Twin boys were born to them in January 1983. The family lived in an apartment in Fort Polk facilities until the time of their separation on March 9, 1984.
*377 Mr. Nicklson is a native of the state of Missouri, where his mother, father and a married sister reside. Mrs. Nicklson has no relatives in this country, other than the older child, and is still a citizen of Germany. In the early morning hours of March 9, 1984, while Mrs. Nicklson was sleeping, Mr. Nicklson gathered the twins and some of their clothing and other necessary items and delivered them to his father and sister near Fort Polk. The children were taken to Missouri and lived with their grandparents for about two months. Mr. Nicklson left home and moved to the barracks inside Fort Polk. He telephoned a neighbor sometime between 8:30 and 10:30 A.M. to go awaken his wife and let her know where the children were. The parties made one unsuccessful attempt at reconciliation. Mr. Nicklson then made arrangements for and was transferred to Fort Leonard Wood, Missouri, about ninety miles from his parents’ home. He then obtained an apartment and with the assistance of a couple of wives of friends maintained the twins with him. With frequent visitation by him and the children to his parents, and by them to his household, he continued to maintain the children at the time of trial in this case.
Mrs. Nicklson filed suit for a legal separation and custody of the children in Vernon Parish. Mr. Nicklson filed suit for a divorce and child custody in Missouri. After considerable legal procedure the Missouri court granted a divorce to Mr. Nickl-son but referred the child custody issue back to the Louisiana court.
Military authorities required Mrs. Nickl-son to vacate the base housing facility after Mr. Nicklson departed to Fort Leonard Wood, Missouri. Mr. Nicklson delivered $500.00 to his sergeant to be used for initial rent and utility deposits for Mrs. Nickl-son. About a month after she was supposed to vacate the apartment she rented a two bedroom mobile home several miles south of Leesville. Her household furnishings were moved by military personnel and vehicles. After about another month she obtained employment at the Wal-Mart store in Leesville. She has no vehicle and is dependent upon fellow employees for transportation to and from work. Her work is less than forty hours per week and her income amounts to approximately $440.00 to $460.00 a month. Rent amounts to $210.00 per month. Mrs. Nicklson and her son Barry subsist on the remainder.
Mr. Nicklson’s total available income amounts to $1551.00 per month, including his clothing and housing allowance. Were he to live in the barracks at Fort Leonard Wood, Missouri, his income would be reduced by $456.00 per month and he would be required to provide his own clothing.
The reasons for the failure of the parties marriage was not explored in much detail in the trial for custody of the children. It was shown that when living together at Fort Polk, Mr. Nicklson was required to attend physical training on the post from 5:00 A.M. until 6:00 A.M. on weekdays. He then returned home for breakfast and morning ablutions, then reported for duty at 7:00 A.M. Mrs. Nicklson customarily slept until about 8:30 A.M., or later, each morning. Her son Barry dressed, managed for his own breakfast and left for school without her assistance. The record does not disclose what time the twins awakened in the morning or whether they had or needed any attention until Mrs. Nicklson awakened. There was testimony concerning the use of marijuana on occasion by Mrs. Nicklson. In spite of her knowledge that its cultivation was a felony criminal offense that could result in disastrous consequences to both herself and her husband Mrs. Nicklson admitted growing, inside their quarters and over the objection of Mr. Nicklson, a marijuana plant from seed until it reached two feet in height. Mr. Nicklson’s failure to dispose of it over his wife’s objections is not explained. It does appear that Mr. Nicklson became depressed and resorted to the unusual use of alcohol for about two weeks before he moved out and sent the twins to Missouri. It was about that time that Mrs. Nicklson finally acceded to her husband’s demands to destroy the marijuana plant.
*378 Mrs. Nieklson’s son by her first marriage has not lived with her since 1972, when he was two years of age. She has seen him on only one occasion since, when he went to Germany to visit her. She apparently maintains some sporadic communication with him but has made no effort to see him since she returned to this country. She has also discussed with Mr. Nicklson sending her son Barry to live with his father who resides in Louisiana.
The trial court granted a judgment of joint custody of the twin boys, which has the practical effect of awarding custody to Mr. Nicklson and providing for visitation by Mrs. Nicklson for 30 days each summer. No plan of implementation of joint custody in accordance with LSA-C.C. arts. 146 and 157 was adopted.
THE ISSUES
Mrs. Nicklson appeals the trial court judgment and urges one specification of error, to-wit:
“The trial court erred by according undue significance to the factor of stability of environment in light of the manner in which the children came into the physical custody of appellee.”
Appellant urges that the actions of Mr. Nicklson in spiriting the children out of this state was an effort to defeat this state’s jurisdiction; that his actions should not be rewarded by an award of custody; and, that the court should not deny the mother the custody of the children simply because to do so would interrupt their present stable environment. Among the reasons stated by the trial court for the award of custody to the father some emphasis was given to a concern that to do otherwise would disrupt the stability of the environment the children had lived in over a year pending trial.
We find that the record amply supports the custody award for reasons other than continuity of the children’s environment. We also agree with appellant that stability should not be considered a controlling factor when the facts as a whole support a change in children’s circumstances. To do so would be to ignore the requirement that the controlling factor must be the best interest of the children in view of the totality of the circumstances.
In this case we have reservations as to whether the father removed the children from this state for the primary purpose of defeating jurisdiction or simply in order to be able to demonstrate a stable environment at some later time. We can appreciate the dilemma of the father who was required to report daily to perform his military duties while his wife was so uncaring for the needs of two children one year of age as to sleep until 8:30 A.M., or later. It is not likely they had as yet learned control of their bodily functions, and it is most probable they needed baths, feeding and exercise. The father could observe daily his stepson, Barry, then about 10 years of age, having to fend for himself, without care, assistance or any loving attention from his mother in the mornings. The trial court was hesitant to declare the mother’s conduct neglectful, understandably because of the presence of appellant’s friends in the courtroom. We find her conduct to have been neglectful of her responsibilities as a mother and far below the standard acceptable to society and the courts charged with the protection of children of tender age.
The trial court also had evidence tending to indicate that appellant did not seem to feel what we believe to ordinarily be a mother’s attachment to her two older children. She had demonstrated no particular desire to see her older child in Indiana, and in over a year in this country had not made any attempt to have him visit with her. She had even considered sending Barry away from her to live with his father, to whom she was never married.
The impracticability of Mr. Nicklson separating from his wife and supporting two households on his military salary, far removed from any relative who could render assistance in caring for the children, could very well account for his actions in removing the children to Missouri. The trial *379 court was obviously impressed with this father’s dedication to his children demonstrated by maintaining them in a household with only day care while he performed his duties at the army bjase. The frequent assistance of his parents in caring for the children for short periods of time is surely beneficial to the childrén.
The record shows thsjt had the custody of the children been returned to appellant and Mr. Nicklson been ordered to pay a maximum amount out of his salary to assist in their care, the family would still have had to survive in poverty.^ Mrs. Nicklson is dependent for transportation and assistance from whatever friends she may find available. The welfare of the children would have been dependent upon the continued good health of their mother, her ability to earn some funds and a constant dedication to the children, which the trial court had reason to question.
The custody of children is not to be awarded in order to reward or punish either parent. The sole criterion to be met is the best interest of the children. Turner v. Turner, 455 So.2d 1374 (La.1984), LSA-C.C. arts. 146, 157. The preference of the mother for the custody of children has been legislatively abolished. LSA-C.C. art. 146. While it is frequently found that the best interest of very young children is to be placed with their mother, each case must be considered in light of the attendant circumstances. Patel v. Moody, 434 So.2d 681 (La.App. 3rd Cir.1983).
In this case, the trial court remarked on the desirability for stability of an environment. Other than the fact that these children have been in the same environment in excess of two years, we are impressed with the apparent stability of that environment. The award was not made solely or, we believe, even principally because of the length of their stay. The trial court had the opportunity to see the witnesses and evaluate their credibility. It is fundamental that the trier of fact be granted vast discretion in granting the custody of children and its decision will not be disturbed on appeal unless clearly erroneous or a showing is made of abuse of that discretion.
For the reasons herein stated we affirm the judgment of the trial court.
Costs of this appeal are taxed to appellant in accordance with the provisions of LSÁ-C.C.P. Art. 5188.
AFFIRMED.