505 So.2d 897 (1987)
S.J., Plaintiff-Appellant,
v.
S.M., Defendant-Appellee.
No. 18573-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Writ Denied June 12, 1987.
Booth, Lockard, Politz, LeSage & D'Anna by Nyle A. Politz, Shreveport, Cooper, Hales & Aycock by Robert S. Kennedy, Jr., W. Monroe, for plaintiff-appellant.
Sockrider, Bolin & Anglin by H.F. Sockrider, Jr., Shreveport, for defendant-appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
The natural father appealed a judgment awarding sole child custody to the mother with specific visitation rights to the father. For the reasons discussed below, we affirm.
While the plaintiff-father (SJ) and mother (SM) were married they had one son, BSJ, born in May 1981. The couple separated in November 1982 and divorced in October 1983. The joint custody plan at that time *898 provided for alternating weeks between the parents. They have both remarried, and the record reflects there is much animosity between the families. The basic issue in the case is whether or not SM's new husband, PM, sexually abused BSJ.
At the conclusion of the lengthy trial in April 1986, the trial judge held that the evidence did not support the claim of child abuse and, in this case, joint custody was inappropriate. He awarded sole custody to SM with limited visitation by SJ. Additionally, the trial court ordered that BSJ was not to be alone with either of his paternal grandparents or engage in conversation regarding PM.
The father appealed alleging three errors on the part of the trial court: 1) in finding that no sexual abuse occurred in light of "uncontradicted medical findings of sexual abuse", 2) in according any significant weight to lay and expert opinion concerning the child's credibility, and 3) in the weight given the court-appointed team of professionals' opinion that BSJ had not been abused in light of the team's "limited experience and erroneous methodology".
The father argues that the lower court abused its wide discretion in apparently disregarding the testimony of a treating physician, Dr. Meade O'Boyle, and concluding that there was no sexual abuse. A treating physician's testimony should receive greater weight than a physician called upon for diagnosis only. Lewis v. Alloy Casting of La., Inc., 465 So.2d 847 (La.App. 2d Cir.1985). However, the treating physician's testimony is not irrebuttable. As the trier of fact, the trial judge was required to weigh the testimony of all the medical witnesses.
Accusations of sexual abuse date back at least to April 1985. BSJ has been examined by numerous doctors on numerous occasions and no evidence of sexual abuse was discovered. We note that in May 1985 BSJ had an extensive examination at the request of the plaintiff and no evidence of sexual abuse was found. Also, in July 1985, BSJ's paternal grandfather took him to the emergency room of a Monroe hospital with allegations of sexual abuse. Nothing was confirmed. Indeed, in May 1985 the parties agreed that the trial court would appoint a team of professionals (a psychiatrist, a child psychologist and two additional psychologists) to make a thorough examination and investigation. The team provided its findings and recommendations to the trial judge in June 1985. The conclusions were that PM was not abusing BSJ, and that much of the problem stemmed from the father's mother who, because of her suspicions about abuse, caused BSJ to relate things that had not actually happened. The team recommended sole custody in the mother and that BSJ not be left alone with his paternal grandparents. A provisional custody plan was implemented and trial was set for September 8, 1985.
Then, over the Labor Day weekend in 1985, the paternal grandparents took BSJ to Dr. O'Boyle who diagnosed anal rape. At this point DHHR intervened and BSJ stayed in a foster home from some eight months.
Numerous witnesses were called on both sides. Dr. O'Boyle was the only examining physician who believed BSJ had been abused. Other experts, who examined BSJ within days of the alleged rape could find no evidence of abuse. Indeed, there was much testimony regarding fecal hoarding as a possible explanation for BSJ's symptoms. The foster mother testified that BSJ passed an unusually large stool on the first morning he was with her, i.e., the day after Dr. O'Boyle's diagnosis. BSJ indicated to the foster mother that he had earlier hurt himself on something in the bathtub. BSJ did have a history of fecal hoarding.
The medical evidence is conflicting and there is no indication that the trial judge was clearly wrong in concluding that, based upon all the evidence presented, BSJ had not been sexually abused. There was obviously a reasoned, thoughtful evaluation of the totality of expert medical testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*899 There was professional and lay testimony regarding statements and recantations by BSJ regarding sexual activities with PM. The father argues that the court erred in according any significant weight to this testimony. The basic fact that a child complains of sexual abuse and then recants these allegations is certainly to be considered by the trial judge. See, generally, State in re Interest of R.W. v. J.L.W., 491 So.2d 652 (La.App. 2d Cir.1986), writ denied 493 So.2d 649 (La.1986). There is no indication that the trial judge gave this evidence any undue weight.
Finally, the plaintiff challenges the methodology and experience of the court-appointed team of professionals. The record indicates a conflict of opinion among professionals regarding methodology. Again, such conflict is certainly to be considered by the trier of fact. There is no indication that the trial judge acted improperly in considering the findings and recommendations of the team. Indeed, the father initially agreed to the appointment of the team. Likewise, the team's experience level was sufficient to satisfy the court. All the expert witnesses were professionals with varying degrees of expertise and experience. The trial judge is entitled to weigh this background with their testimony. Simply because the trial judge ruled against a party does not mean he did not consider his evidence. We find no abuse of discretion.
This case involves a credibility assessment. The trial judge chose to believe the testimony of some witnesses and to disregard the testimony of others. The evidence is clearly conflicting and the trial court's task is to make a factual determination. As an appellate court, we are required to give great weight to factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences of fact. Arceneaux, supra; State in the interest of R.W.v. J.L.W., supra. We do not find that the court abused its wide discretion or was clear]y wrong in its fact-finding.
While the statutory presumption is in favor of joint custody, such presumption is clearly rebuttable. Based upon the extensive litigation history in this case and the nature of that litigation, it is obvious that the parties are unable to settle their differences of opinion amicably, or to insulate BSJ from these differences. The trial court's decision to grant sole custody to the mother was clearly in the child's best interest. See La.C.C. Art. 146; Turner v. Turner, 455 So.2d 1374 (La.1984).
For these reasons we affirm the judgment of the district court, at appellant's cost.