525 So.2d 304 (1988)
Sherry Manchester CROCKETT
v.
Emmett Eugene CROCKETT, Jr.
No. 87 CA 1145.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
Rehearing Denied June 14, 1988.
Michael X. St. Martin, Houma, for plaintiff and appelleeSherry M. Crockett.
Kerry A. Kissel, Gretna, for defendant and appellantEmmett E. Crockett, Jr.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is a child custody proceeding. Appellant, Emmett Eugene Crockett, Jr., appeals the trial court judgment terminating the joint custody agreement and awarding sole custody of the minor child to Sherry Manchester Crockett, appellee.

FACTS
The parties were married on June 20, 1981, and established their matrimonial domicile in Terrebonne Parish, Louisiana. One child was born of the marriage, namely Jason D. Crockett. On June 12, 1986, appellee filed a petition for separation from bed and board in Terrebonne Parish requesting sole custody of the minor child. On September 29, 1986, the trial court rendered judgment awarding custody to both parties jointly, designating appellee as the primary custodian and awarding appellant *305 visitation rights pursuant to a joint custody plan.[1]
On November 6, 1986, appellant filed a rule seeking to implement a joint custody plan. Thereafter, appellant discovered that appellee and their minor child had moved to Massachusetts. In December, 1986, appellant and appellee met in the chambers of Terrebonne Parish District Judge Edward J. Gaidry to discuss the joint custody plan. Pursuant to the meeting, appellant was granted visitation of Jason from January 2January 23, 1987.[2] Appellant was thereafter to return the child to Massachusetts. However, on January 21, 1987, appellant filed a petition for a change of custody in Jefferson Parish, alleging that he was a resident of that parish. By ex parte order, the trial court ordered that the child remain in Jefferson Parish pending a hearing on the custody petition.[3] Appellant failed to return the minor child on January 23, 1987, in violation of the Terrebonne Parish court ordered visitation plan.
Thereafter, appellee filed a rule for contempt of court or, alternatively, to enforce the existing visitation schedule. The trial court found appellant in contempt of court and sentenced him to thirty days in the Terrebonne Parish jail.[4]
On February 18, 1987, appellee filed a petition for change of custody. After hearing, the trial court terminated the joint custody arrangement and granted appellant six days supervised visitation per month in Massachusetts until after December 31, 1987, at which time the court would entertain appellant's request for unsupervised visitation and/or increased visitation.
Appellant appeals the trial court's findings raising the following errors:
(1) The trial court abused its discretion in ordering a change in custody.
(2) The trial court abused its discretion in restricting appellant's visitation rights.
(3) The trial court erred in admitting into evidence tapes and transcripts of confidential telephone conversations.[5]

ASSIGNMENTS OF ERROR NOS. 1 & 2
Although the trial court retains a continuing power to modify a child custody order, there must be a showing of change of circumstances materially affecting the child before the court may consider making a significant change in a custody order. The party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
In the instant case, we find that two major changes in circumstances have occurred *306 since the initial order awarding joint custody. First, in an attempt to find satisfactory employment, appellee moved to Massachusetts, where she and the minor child live in a large home with appellee's parents and appellee's younger brother and sister. Second, and more significant, is the deterioration of the parties' ability to communicate on issues concerning the responsibilities of raising the child. The testimony supports the trial court's finding that both sides feel a great deal of animosity and distrust. Further, both sides agree that there has been an inability to communicate. Attempts to discuss important issues concerning visitation, the child's education, and his general welfare have resulted in accusations, threats, and name-calling. While this atmosphere has probably arisen, in part, from appellee's sudden move from the state and appellant's attempt to retain the child, the overall result is that the parents are unable to communicate about the child's well-being.
This second change, combined with the added problems and communication required to deal with joint custody in a longdistance arrangement, is significant and can only result in a situation deleterious to the child should it be allowed to stand. The present plan must be modified in order to meet the child's best interests, considering the change in circumstances and the satisfaction of the heavy burden of proof rule.
The pertinent code articles regarding the issue of best interest of the child and joint custody are as follows:
LSA-C.C. art. 157 provides in pertinent part:
A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146.
LSA-C.C. art. 146 provides in pertinent part:
A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly. The court shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order, or the parents acting individually or in concert may submit a custody implementation plan to the court prior to issuance of a custody decree. A plan of implementation shall allocate the time periods each parent shall enjoy physical custody of the children and the legal authority, privileges and responsibilities of the parents.
. . . .
C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
. . . .
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
*307 (i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
....
E. Any order for joint custody, or any plan of implementation effected pursuant to Paragraph A of this Article, may be modified or terminated upon the petition of one or both parents or on the court's own motion, if it is shown that the best interest of the child requires modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order.
. . . .
K. Notwithstanding any provisions of this Article to the contrary, when an award of joint custody has been made to parents domiciled in the state of Louisiana and either parent changes his or her domicile to another state, the presumption that joint custody is in the best interest of a child shall cease to exist. In such case, either parent may petition for and the court after a contradictory hearing may modify the joint custody award or award sole custody of the child to either parent in accordance with the best interest of the child. Nothing contained herein shall prohibit the parents from continuing joint custody by agreement, [emphasis ours]
Whether we find that the presumption of joint custody "ceased to exist" upon appellee moving to Massachusetts or, as argued by appellee, that this fact "rebutted the presumption in favor of joint custody" is immaterial. By whatever standard we apply, the result is the samethe best interest of the child required a change of custody in the case sub judice.
Even where there is a rebuttable presumption, the burden rests with the party challenging the presumption to convince the fact-finder that his proposed conclusion is more correct than the presumed one. A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary. See 9 J. Wigmore, Evidence § 2491(3) (3d ed.). "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear." Lincoln v. French, 105 U.S. (15 Otto) 614, 617, 26 L.Ed. 1189 (1881); Turner v. Turner, 455 So.2d 1374 (La.1984).
The LSA-C.C. art. 146 presumption only compels the judge to award joint custody in those cases where other things are equal, where there is insufficient evidence to rebut the presumption, or whenever neither parent alone would be able to manage a sole custody arrangement and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion. In such a case, it becomes necessary for the other party to reestablish the propriety of the presumption's conclusion. Turner v. Turner, supra.
There is but one element upon which the trial court cannot base its decision. LSA-C.C. art. 146(A)(2) expressly forbids the judge from preferring a parent as the custodian because of that parent's sex. Turner v. Turner, supra.
The trial court found that the presumption in favor of joint custody had been rebutted. Ample testimony from both parties reflected that although both parents cared for the minor child and were willing and able to provide for the child, they were *308 unable to "facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." LSA-C.C. art. 146(C)(2)(j). As the trial court stated in oral reasons for judgment: "Obviously joint custody cannot be built upon hatred, distrust, and a lack of communication." At trial, although both parties exhibited qualities that the court found to be sufficient to care for the child, the testimony from both sides demonstrated that the parties could not agree on who would get the child, even on a day to day basis.
Based on the extensive history of the litigation in this matter, it is clear that the parties were unable to settle their differences amicably or to insulate the child from their battles. The conflicts between the father and the mother run deep, and it is doubtful that any order of any court could quell entirely those conflicts. Unfortunately, the minor child has been caught in the cross fire. It is for this very reason that the Legislature mandated that the court look only to the child's best interest and not to whatever interests the parents may have. This type of case is precisely one of those "other facts" within the scope of LSA-C.C. art. 146(C)(2)(1). The child is an innocent, unrepresented third party in divorce cases and should not become a victim of the battle.
The trial court considered the best interest of the child in awarding sole custody of the minor child to appellee. Testimony revealed that appellee moved to Massachusetts to live with her family, began working, and arranged for the child to be in a day care center. Testimony also revealed that appellant had a full time job and spent a great deal of time with his parents. Although the distance alone between Louisiana and Massachusetts was not the deciding factor against joint custody, the distance plus the distrust between the parties would create conflict if an award for joint custody were made. It is clear that the child's best interest cannot be served by a joint custody arrangement. The heavy burden of proof required to establish a change of circumstances materially affecting the child was met in the instant case.
This court recognizes that the parties may challenge any custody decree in a future proceeding, but until such time as the parties can demonstrate their willingness and ability to serve the child in a unified manner and put their own interests aside, any joint custody award would be in vain.
We cannot say that the trial court's decision to grant sole custody to appellee was manifestly erroneous. Therefore, the decision to grant sole custody to appellee is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] The September 29, 1986, judgment awarded the following visitation privileges to appellant:

(1) Alternating weekends commencing on Fridays at 6:00 P.M. to Sundays at 5:00 P.M., said alternating weekends are to commence on June 27, 1986 at 6:00 P.M.;
(2) Every Wednesday of each week commencing at 5:00 P.M. wherein defendant, Emmett Eugene Crockett, Jr., is to pick up his minor child, Jason Crockett, from a designated babysitter and to return minor child to plaintiff, Sherry Manchester Crockett at 8:00 P.M. of each Wednesday thereafter; and
(3) One week in June, July and August of each year and alternating holidays as will be provided in a stipulated joint custody plan.
[2] The transcript and Judgment on the Rule for Contempt indicates that counsel for both parties and the Court reached an arbitration agreement at a December 31, 1986, conference. Under the agreement, appellee was required to make the minor child available for three weeks visitation in accordance with the parties' efforts to amend the prior joint custody plan. Appellee contends that an order was issued which required the parties to comply with the schedules in the proposed Joint Custody Plan; no such order has been made a part of this record.
[3] This court and the Fifth Circuit Court of Appeal found Terrebonne Parish to be the correct venue for the case.
[4] The Louisiana Supreme Court granted appellant's writ on the contempt judgment, in part, and the sentence for contempt was reduced to coincide with time already served.
[5] We need not address this issue as the trial judge related that any reference to the tape was not considered in rendering his decision.