470 So.2d 374 (1985)
Jose A. MARTINEZ
v.
Domitila MARTINEZ.
No. 85-CA-21.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
Writ Denied June 28, 1985.
*375 James H. Minge, A. Miles Pratt, III, New Orleans, for plaintiff-appellee.
Evangeline G. Abriel, David Girard, Jeanne O'Boyle and Richard Whelton, New Orleans, for defendant-appellant.
Before KLIEBERT, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
This appeal arises from a custody judgment rendered subsequent to a divorce which changed the custody of two minor children from the mother, Mrs. Domitila (Martinez) Campos to the father, Jose Martinez.
Domitila Martinez Campos and Jose A. Martinez were married in Havana, Cuba on June 24, 1966. Two children were born of the marriage: Noemi, now age 17, and Daniel, now age 10. On January 1, 1983, Mrs. Campos filed a suit for separation based upon Mr. Martinez's cruel treatment and upon his having abandoned her on October 8, 1982. On May 20, 1983, a consent judgment was signed, granting Mrs. Campos custody of the two minor children and ordering Mr. Martinez to pay alimony pendente lite and child support.
On October 27, 1983, Mr. Martinez filed a petition for divorce, based upon the couple's having lived separate and apart without reconciliation for one year or more. A divorce was granted on February 24, 1984, and Mrs. Campos was granted custody of the minor children.
Following the divorce, the husband married Albertina Martinez on March 14, 1984, and the wife married Fernando Campos on August 21, 1984.
On June 14, 1984, Mr. Martinez filed a rule to modify the child custody and alimony decree. That rule was heard on August 23, 1984, and sole custody was awarded to Mr. Martinez, with visitation to Mrs. Campos for six weeks during the summer, every other weekend, and alternating holidays.
Thereafter, Mrs. Campos perfected an appeal of that judgment assigning as error that an award of sole custody to appellee Jose Martinez is not in the best interest of the minor children.
The issue in this case is whether the court erroneously failed to award joint custody of the children; or alternatively whether the children should remain in sole custody of Mrs. Campos in light of the law and evidence.
In this respect we note beforehand that, while generally arguing for the joint or sole custody of both Noemi and Daniel, appellant does not strongly dispute the change of custody of Noemi, the parties' teenage daughter.
LSA-C.C. Article 157 provides that a change of custody after an original award is to be granted in accordance with LSA-C.C. Article 146 and the best interest of the child is the sole criterion in applying Article 146 to the facts of a change of custody case. Turner v. Turner, 455 So.2d 1374 *376 (La.1984); LSA-C.C. art. 157; LSA-C.C. art. 146.
LSA-C.C. Article 146 provides a presumption in favor of joint custody; however the presumption is rebuttable by evidence showing joint custody not to be in the best interest of the child. In that instance, the sole custody is to be granted to one of the parents. Turner supra; Donaldson v. Donaldson, 459 So.2d 616 (La. App. 5th Cir.1984); Sharp v. Sharp, 470 So. 2d 371 (La.App. 5th Cir.1985).
In order to rebut the presumption, the Article [146(c) ] lists eleven specific factors to be considered as well as consideration to be given to any other factor the trial court finds relevant. The burden of proof that joint custody is not in the best interest of the child is upon the parent requesting sole custody. LSA-C.C. art. 146(A)(2).[1]
The twelve factors delineated by Article 146 are:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
In applying the standards to this case, it should first be noted that the parties involved are Spanish-speaking and an interpreter was utilized in the trial of this matter. The two minor children were interviewed by the trial judge in chambers, the transcript of which is part of the record.[2]
In regard to the first factor, the facts as revealed at trial show that both parties were previously involved in illicit relationships, but now are remarried to their respective paramours. Mr. Martinez has a small child by his present wife, born shortly after their marriage. However, both parties evidenced sincere love, concern and affection for the children. Both children likewise love their parents although Noemi has been experiencing difficulties in her relationship with her mother since the divorce. Her testimony indicated a dislike of her mother's lifestyle, and disapproval of her mother's relationship with Fernando, her 19 year old paramour whom she married prior to trial. Noemi left the home to live with her father prior to the hearing. Danny, the youngest, evidenced strong emotional ties with both parents but was distressed by occurrences in which his father and Noemi attempted to undermine his relationship with his mother. He stated his father threatened him once with regard to *377 his testimony. Mrs. Campos was candid in admitting that one of the reasons she married Fernando was to provide a decent home for Danny, although she stated they considered marriage from the beginning of their relationship.
In regard to education, religion and disposition of the parties involved to give love, affection and guidance, the facts show that both parties are able to meet the needs of the children. Neither parent has extensive formal education, but both seemed concerned. However, when Noemi dropped out of high school, Mrs. Campos attempted to resolve her problems through contacting the school and providing counseling. Noemi refused to go to counseling and Mr. Martinez refused to assist Mrs. Campos with this problem. Danny's grades were on the decline at the time of trial, but it is apparent he had been feeling distressed regarding his father's undermining attempts and attitude toward his mother. Basically, he appeared to feel caught between two people he loved.
As to religion, Mr. Martinez and his wife took Danny to church regularly when he visited. Mrs. Campos stated she would as well, but had not in the past since Danny was with his father on Sunday.
The third factor is economic and Mr. Martinez shows a solid employment history and is apparently able to provide a higher standard of living than Mrs. Campos. Mrs. Campos, on the other hand, receives very little income; however, Mr. Campos is a construction laborer and Mrs. Campos enrolled prior to trial in a vocational school to attempt to increase her education and job skills.
The next two factors involve the length of time the child has lived in a stable, satisfactory environment, the desirability of maintaining continuity and the permanence as a family unit of the home. Noemi resides with her father and appears to be happy in that environment. Danny's removal from custody of the mother involves a change of schools. The evidence further shows that Danny has been in his mother's custody since the divorce, and that Mr. Campos's presence in the house and his relationship with his mother does not disturb him. He in fact stated he likes Mr. Campos. Both homes appear to reasonably satisfy the permanence aspect of the family unit, despite the evidence that Mrs. Martinez's immigrant status is uncertain.
The next two factors involve the moral fitness and the mental and physical health of the parties. In this respect, both parents have been involved in illicit relationships in the past. However, both parties married their respective paramours and their lifestyles are ordinary. The evidence does not show any mental or physical health problems which would act to the detriment of the children.
The home, school and community record of the children were discussed previously and we find there are no other factors in this regard due consideration.
Another factor to be considered is the preference of the children. Noemi desires to live with her father and Mrs. Campos does not strenuously object to this arrangement, especially considering Noemi's age and the problems they have had between them. Danny, on the other hand, evidenced his desire to remain with his mother and Mr. Campos, although he stated he would not mind living with his father.
The tenth factor to be considered is the willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. The parties herein do not appear to be unreasonable nor to actively impinge on the relationship of the other parent with the child although several instances were complained of by Mrs. Campos and Danny. The one instance mentioned previously is when Mr. Martinez refused to help with Noemi's school problems; and the others were those in which Danny stated that Mr. Martinez attempted to make him "talk about" his mother in court, and told him not to love his mother. He also stated Noemi told him to disobey his mother, but Mr. Martinez and Noemi disputed Danny's statements. Presuming the incidents to have occurred, they are *378 isolated and there is no evidence of a continuing hostile atmosphere between the two families. The entire evidence indicates that the parties are willing to encourage and foster the other parent's relationship with the children.
Finally, the evidence shows that both of the families reside locally and the distance between the residences is not an issue.
After reviewing the record, we find the evidence clearly does not support a change of custody from the mother to the father, especially with such limited visitation rights. The jurisprudence provides that custody should not be changed when to do so would punish the parent for past behavior when there is no proof of detrimental effect on child. Everett v. Everett, 433 So.2d 705 (La.1983). Furthermore, the mother is not considered unfit because of past conduct or past adulterous relationship if she has reformed by ceasing the conduct or marrying the paramour. Wickboldt v. Wickboldt, 448 So.2d 254 (La.App. 1st Cir.1984). Thus, we find the trial court erred in changing the custody from Mrs. Campos to Mr. Martinez. However, we also find that the evidence indicates that a joint custody arrangement would be in the best interest of the children and will facilitate and encourage the parent-child relationships in this case. Since a plan of implementation was neither provided nor ordered by the trial judge, the case must be remanded for this purpose in accordance with LSA-C.C. Article 146(D).
Thus, for the foregoing reasons and after a review of the law and evidence, we hereby reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion. Appellee is to pay costs of this appeal.
REVERSED AND REMANDED.
NOTES
[1] The trial court has broad powers in making the determination and may direct an investigation to assist in the decision. LSA-C.C. art. 146(c)(3). Turner, supra.
[2] The trial court judge did not provide reasons for judgment; thus we cannot determine whether or not he considered joint custody.