CURRAULT, Judge.
Edward Joseph Lirette and Nancy White Lirette, presently known as Nancy Goodman, were divorced in the Twenty-Fourth Judicial District Court for the Parish of Jefferson on April 24,1981. At the time of the divorce, Nancy Lirette voluntarily allowed the permanent care, custody and control of the minor children born of the marriage, namely, Edward Joseph Lirette, II, Pamela Lirette and Gregory Lirette, to be awarded to the father, Edward Joseph Lir-ette. Also, at the time of the divorce, *1143 Nancy Lirette was in desperate financial condition and was unable to care for the three children. Prior to the divorce, she had been awarded child support in a separate proceeding pursuant to her legal separation. On May 15, 1984, Nancy Lirette was ordered to pay child support in the amount of Two Hundred Dollars ($200) per month for the support of the three minor children.
Subsequently, on January 16, 1985, Nancy Lirette filed a rule for sole custody and/or joint custody. On March 29, 1985, the rule for custody and/or joint custody was heard. The court rendered judgment ordering the sole permanent care, custody and control of the minor children to remain with Edward Joseph Lirette and visitation to Nancy Lirette with the younger two minor children, Pamela T. Lirette and Gregory B. Lirette, on certain specified dates and times.
Nancy Lirette thereafter perfected an appeal of the judgment alleging the following as error:
(1) Whether or not the trial court erred in not allowing evidence on previous rules against Edward Lirette for child support arrearages and evidence that Mr. Lirette had not previously provided child support and in the failure of the trial court to allow the records from the Twenty-Fourth Judicial District Court for the Parish of Jefferson from the Division “B” separation case and child support arrearages rules to be offered into evidence in connection with the rule for custody and/or joint custody.
(2) Whether or not the trial court erred in not allowing sole custody to Nancy Goodman as a result of the rule for sole custody and/or joint custody.
(3) Whether or not the trial court erred in not granting joint custody to both parents with Nancy Goodman as the primary custodian and Edward Lirette as the noncustodial parent.
During the rule for sole custody and/or joint custody, the attorney for Nancy Goodman questioned Edward Lirette under cross-examination with regard to the final divorce and with regard to the prior rules for child support arrearages that had been filed by his ex-wife prior to the divorce proceedings in 1981. Counsel for Mr. Lirette objected on the basis that those matters were irrelevant as they occurred five years previously. The trial judge agreed, particularly in light of the fact that from 1981 onward the children have been in Mr. Lirette’s sole custody. We agree with the trial court that Mr. Lirette’s history of support payments prior to 1981 is so far removed from the current situation as to be irrelevant.
Appellant’s second and third specification relate to the trial court’s refusal to change the sole custody of the children from Mr. Lirette to appellant or to award joint custody with primary care changed to appellant.
The law provides that the standard for an award or change of custody is the best interest of the children. Goldman v. Logue, 461 So.2d 469 (La.App. 5th Cir.1984). The standard for appellate review for custody disputes is whether the trial court abused its much discretion. Regouffre v. Regouffre, 467 So.2d 1356 (La.App.5th Cir.1985).
In this case, the evidence shows that the father was remarried, but at the time of the hearing was physically separated from the second wife, Carol Lirette. Mr. Lirette admitted to having financial problems for some months previous to the hearing and that he filed for bankruptcy in the late summer of 1984. At one point, the heat in the house was turned off during the winter and he reconnected it without paying the bill. He admitted that at times the heat was turned low, but stated it was by choice.
Appellant and her husband of IV2 months testified that on several occasions when they visited the children at Mr. Lirette’s house, the house was cold and the children were alone. Appellant was particularly concerned about thirteen year old Pamela, a special child who is mildly retarded. Mr. Goodman also stated that on one occasion Pamela came to her dirty and with sores on her face and that the children were hungry *1144 when they visited with her. However, the overall evidence indicates the children were clean, healthy, well-fed and happy despite Mr. Lirette’s financial problem.
Both sides accused the other of alcoholism. Mr. Lirette testified that he consumes a few beers a day and six to eight a day on the weekend. Appellant, it was shown, may have been a heavy drinker in the past but apparently stopped during the prior ten months.
Neither party had medical insurance on the children and there, was evidence appellant was not current in her child support payments.
Mr. Lirette’s present wife, although separated from him, continues to visit the ap-pellee’s home to see Mr. Lirette and the children on a regular basis. According to the testimony, she also had a drinking problem while they lived together. During that time, the Lirettes attended several Alcoholics Anonymous meetings to determine whether Carol Lirette was an alcoholic.
Both Edward and Carol Lirette stated that, before appellant’s remarriage, the children’s mother harassed the couple with drunken telephone calls and required Mr. Lirette to rescue her from a couple of amorous entanglements. Since her marriage, however, her behavior appears to have improved.
The children’s school records were introduced which showed that eleven year old Gregory had discipline and grade difficulties until his father placed him in another school. The other children’s grades were reasonable. Pam’s record indicated several absences, however. Mr. Lirette indicated that she was difficult to awake in the mornings. He said that, while she was tardy, she was not necessarily absent since he did not always report to the office when he brought her to school. The sixteen year old son Edward, it was admitted, was on juvenile probation for a traffic offense. The evidence also indicated that Mr. Lirette tends to the religious upbringing of the children and takes them to church every Sunday even when they are visiting with their mother.
In regard to appellant’s ability to care for the children, the evidence revealed that she married Steven Goodman shortly before the hearing. Mr. Goodman apparently has a stable job and their combined incomes totalled approximately Fourteen Hundred Dollars ($1400) per month. Appellant does not work outside the home but receives rentals from property she received in the community property settlement with Mr. Lirette. They testified that they were purchasing a large home contingent on their receiving custody of the children. Mr. Goodman appeared willing and able to care for his wife’s children.
While appellant complained that Mr. Lir-ette has refused on occasion to allow the children to visit her, the evidence showed otherwise. The evidence further showed that appellant has a history of treatment at the East Jefferson Mental Health Clinic, but that she stopped going in July, 1984.
The testimony of all the witnesses indicates that both parents love the children and are deeply concerned for their welfare. Both parties’ spouses also evidenced concern and care for the well-being of the children.
Finally, the trial judge spoke to all the children alone in chambers without objection. He was convinced that they are in a stable, happy environment and stated that he believed the best interests of the children would best be served by allowing them to remain with Mr. Lirette.
After reviewing the evidence herein, we cannot say that the trial judge abused his discretion in not physically removing the children from Mr. Lirette’s care to appellant. However, appellant also alleges that the trial court erred in failing to award joint custody. We find this issue has some merit.[1]
*1145 In a change of custody case, as well as an original award of custody, the law provides a presumption that joint custody is in the best interest of the child. LSA-C.C. art. 157; LSA-C.C. art. 146. The presumption may be rebutted in accordance with LSA-C.C. art. 146(C)(2)(e).[2] Turner v. Turner, 455 So.2d 1374 (La.1984); Sharp v. Sharp, 470 So.2d 371 (La.App. 5th Cir.1985); Martinez v. Martinez, 470 So.2d 374 (La.App. 5th Cir.1985) writ den. 472 So.2d 923 (La.1985). The burden of proof that joint custody is not in the best interest of the child is upon the parent requesting sole custody. LSA-C.C. art. 146(A)(2); Martinez, supra. Article 146 also provides that when the arrangement is deemed applicable, the parents in concert or separately may submit a plan to the trial court; and when they are unable or unwilling to do so, the trial court is empowered to confect the plan of implementation.
In Turner, the Louisiana Supreme Court noted:
“The article 146 presumption only compels the judge to award joint custody in those cases where other things are equal; or where there is insufficient evidence to rebut the presumption; or whenever neither parent alone would be able to manage a sole custody arrangement, and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion. In such a case, it becomes necessary for the other party to reestablish the propriety of the presumption’s conclusion.
“There is but one element upon which the trial court cannot base its decision. Article 146(A)(2) expressly forbids the judge from ‘prefer[ring] a parent as the custodian because of that parent’s sex.’ ” At page 1379. (Footnote omitted)
We have reviewed the guidelines provided for in LSA-C.C. Article 146(C) in analyzing the facts in this case and do not find that the presumption of joint custody was rebutted. The appellee testified to two isolated instances in which appellant appears to have been recalcitrant in cooperating with appellee. Appellee points to the fact that Mrs. Goodman was two months in arrears for child support and states that she was uncooperative in changing summer visitation for Pamela in order to allow her to attend a special summer school program. On the other hand, Mrs. Goodman stated that Mr. Lirette withheld visitation on some occasions when she failed to pay the support. The evidence however does not support Mrs. Goodman’s contentions; and Mr. Lirette’s complaints have, according to the record, been resolved.
Despite these minor differences, the parties otherwise appear to cooperate reasonably well and we can find no reason that joint custody would not be in the best interest of the children in this case. On the contrary, it appears that joint custody *1146 would facilitate and encourage the parent-child relationships. This is not to say, however, that the joint custody requires an equal division of physical custody. Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983); Fisher v. Hernandez, 471 So.2d 270 (La.App. 4th Cir.1985); Doucet v. Doucet, 465 So.2d 175 (La.App. 3d Cir.1985); Cole v. Cole, 467 So.2d 872 (La.App. 2d Cir.1985); Knight v. Knight, 470 So.2d 644 (La.App. 1st Cir.1985). Each case necessarily depends upon the ages of the children, the respective parents’ availability and desires and other factors. Plemer, supra. This arrangement simply means that the physical custody shall be shared in such a way as to assure a child of frequent and continuing contacts with both parents to the extent feasible. Furthermore, a joint custody order may be modified or terminated if the plan fails to serve the best interest of the child. LSA-C.C. art. 146(E). Thus, we find that the trial court abused its much discretion in failing to consider joint custody in this case.
For the foregoing reasons, and after a review of the law and evidence, we hereby set aside the judgment of the trial court and remand for consideration of joint custody pursuant to LSA-R.S. art. 146.
Appellee is to pay costs of this appeal.
SET ASIDE AND REMANDED.

. We are unable to determine whether or not the trial court considered joint custody by his comments in the transcript.

. The checklist in LSA-C.C. art. 146(C), as amended in 1983, reads as follows:
"(a) The love, affection, and other emotional ties existing between the parties involved and the child.
"(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
“(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
"(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
"(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
"(f) The moral fitness of the parties involved.
"(g) The mental and physical health of the parties involved.
"(h) The home, school, and community record of the child.
“(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
"(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
"(k) The distance between the respective residences of the parties.
"(/) Any other factor considered by the court to be relevant to a particular child custody dispute.”