500 So.2d 817 (1986)
Kenneth W. EISWIRTH
v.
Carol Verlander EISWIRTH.
No. CA 86 0701.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
Writ Denied February 20, 1987.
*818 Sylvia Roberts, Baton Rouge, for plaintiff-appellee Kenneth W. Eiswirth.
William Noland, New Orleans, for defendant-appellant Carol V. Eiswirth.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
Carol Verlander Eiswirth appeals the trial court judgment which terminated the existing joint custody agreement relative to the minor child and awarded sole custody to the child's father, Kenneth W. Eiswirth.
The Eiswirths obtained a legal separation on October 14, 1983. The judgment of separation decreed that the Eiswirths would share joint custody of their toddler son, Scott, pursuant to the plan set forth therein. The plan provided that Scott would reside with each of his parents for *819 alternating two-week periods and that Mr. Eiswirth would pay child support.
On June 26, 1985, Mrs. Eiswirth filed a rule to modify the joint custody order and increase child support. In her proposed plan for joint custody, Mrs. Eiswirth requested that she be named the custodial parent. She proposed that Mr. Eiswirth have custody of the child on the first and third weekends of the month and for alternating two-week periods in the summer. On July 25, 1985, Mr. Eiswirth answered Mrs. Eiswirth's rule and filed a petition seeking to be named sole custodian, subject to weekend, summer and holiday visitation privileges for Mrs. Eiswirth.
The trial court ordered Mr. and Mrs. Eiswirth and Scott to be evaluated by a court appointed psychologist. After hearing four days of extensive testimony from the parties, their parents, and psychologists over a five-month time period, the trial court, on March 26, 1986, awarded sole custody of Scott to Mr. Eiswirth subject to holiday, weekend and summer visitation privileges for Mrs. Eiswirth. Mrs. Eiswirth is to receive child support during the two-month summer visitation period. Mrs. Eiswirth appeals the trial court's action.
Mrs. Eiswirth seeks remand of the case, alleging that the trial court erred in rendering its judgment without providing written reasons as required by La.Civ.Code art. 146(E), which states "[t]he court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order." This codal provision applies to permanent child custody decrees under La.Civ.Code art. 157(A). The use of the word "shall" in a statute generally denotes a mandatory duty. See Ray v. South Central Bell Telephone Company, 315 So.2d 759, 761 (La.1975); O'Bryan v. O'Bryan, 391 So.2d 1206, 1209 (La.App. 1st Cir.1980). Whether a procedural requirement, such as set forth in the codal article in question in the instant case, is directory or mandatory cannot be determined by a literal reading of the law but can only be determined by ascertaining the legislative intent. Sanders v. Department of Health & Human Resources, 388 So.2d 768 (La.1980), on remand, 394 So.2d 629 (La.App. 1st Cir.1980), writ denied, 399 So.2d 602 (La.1981). As stated in Sanders, 388 So.2d at 770, "[i]f a requirement is so essential to the statutory plan that the legislative intent would be frustrated by non-compliance, then it is mandatory." Usually a statutory provision, even when phrased in the imperative, that does not relate to the essence of the thing to be done, and as to which compliance is a matter of convenience rather than substance, is directory. 388 So.2d at 770.
The purpose of La.Civ.Code art. 146 is to provide for the selection of a custody plan which most effectively promotes the best interest of the child. After the initial implementation of the custody order, the plan may be changed or terminated if to do so is in the best interest of the child. The requirement for the court to provide written reasons for any modification requires the trial court to articulate, for the convenience of the parents and the appellate courts, how such a change or termination is in the best interest of the child. A lack of these written reasons does not frustrate the above stated legislative intent of the article since a determination can be made from the record itself as to whether the modification of the existing order was correct. Therefore, we find that the requirement for written reasons is directory rather than mandatory.
We agree with and adopt the following statement made by this court in Sims v. Sims, 396 So.2d 976, 977 (La.App. 1st Cir.1981).
While the trial judge was in error in this regard, and we do not condone his failure to submit in writing his findings of fact and reasons for judgment, the proper remedy was for appellant to apply for supervisory writs or move for a remand for the purpose of requiring or affording the trial judge an opportunity to comply with the request. Since neither procedure was utilized by appellant, we shall *820 review this appeal on the merits as in any other case where the record contains no reasons for judgment.
The record in the instant case shows that Mrs. Eiswirth did not apply for supervisory writs or file a motion for remand. She requested remand only in her appellate brief. Therefore, we will consider this appeal on the merits.
Mrs. Eisworth also contends that the trial court erred in changing the previously existing joint custody award to one of sole custody in favor of Mr. Eisworth. The supreme court, in its recent decision in Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986), stated that several traditional jurisprudential precepts must be followed, in addition to the legislatively mandated best interest principle, in order for the trial court to modify a permanent child custody award.
In the instant case, Scott is more than four years old and approaching school age. In fact, there is testimony in the record that because of Scott's curiosity and intelligence, his father has already enrolled him in a preschool program to encourage his intellectual development. Therefore, two of the jurisprudential precepts enumerated in Bergeron have been followed in regard to the change in custody. In Bergeron, the supreme court stated that the "change in circumstances" rule must be met, noting that "[a]lthough the trial court retains a continuing power to modify a child custody order, there must be a showing of a change in circumstances materially affecting the welfare of the child before the court may consider making a significant change in the custody order." 492 So.2d at 1194. The court also indicated that, at the time the instant trial took place, the "heavy burden of proof" rule should apply, stating that "when a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed." 492 So.2d at 1199. It is readily apparent that once Scott reaches school age, there is no way that the original plan of joint custody whereby Scott spends alternate two-week periods in New Orleans and Baton Rouge can continue. Bouncing back and forth between schools in two cities would definitely be a change in circumstances that adversely affects the child's welfare as well as being deleterious to his development. Therefore, the present plan must be modified in order to meet the child's best interests, the change in circumstances and heavy burden of proof rules having been satisfied.
The record herein shows that the trial court received extensive evidence relative to the factors enumerated in La.Civ. Code art. 146(C)(2) which must be considered when rebutting the presumption that joint custody is in the best interest of the child. While La.Civ.Code art. 146(A)(2) provides that the parent seeking sole custody must bear the burden of proof that joint custody is not in the child's best interest, this provision does not create any extraordinary burden on the party requesting sole custody. Turner v. Turner, 455 So.2d 1374 (La.1984).
During the course of the trial, the lower court heard testimony relative to the child's living arrangements, schooling, contact with the other family members and friends, religious training, and personal and medical care while in the custody of each parent. There was also testimony as to each party's financial ability to care for Scott. While the parties always transferred custody from one to the other in accordance with the joint custody plan, it is evident from the record that Mrs. Eiswirth did not agree with the mechanics of the transfers. Apparently, Scott was occasionally reticent about leaving with his mother when she went to get him. It is also evident from the record that Mrs. Eiswirth does not want to communicate directly with Mr. Eiswirth since most matters relative to Scott have been handled by Mrs. Eiswirth's attorney contacting Mr. Eiswirth's counsel, except for the exchange of a few words between the parties at the end of each two-week *821 period. The court heard testimony and received reports from psychologists relative to the positive and negative characteristics of both parties. The court-appointed psychologist described Mr. Eiswirth as cooperative whereas she depicted Mrs. Eiswirth as apprehensive, guarded in her responses and antagonistic to the psychologist. The psychologist who evaluated Scott and his father together reported that Mr. Eisworth engaged in most parenting activities with relative ease. The psychologist who evaluated Scott and Mrs. Eiswirth together found her somewhat angry and disorganized but felt she showed appropriate knowledge of child care and saw no reason that she should be denied custody. The court also heard testimony about Mrs. Eiswirth's father's influence on her life.
After hearing all the testimony and viewing the evidence, the trial court determined there was sufficient evidence to rebut the presumption in favor of joint custody and that sole custody in favor of the father was in the child's best interest.[1] This factual finding is to be accorded great weight since the trier of fact who actually hears and observes the witnesses give live testimony is in a better position to evaluate credibility than an appellate court, which can only read the written words of a cold record. Kikendall v. American Progressive Ins. Co., 457 So.2d 53 (La.App. 1st Cir.1984). Moreover, one of the jurisprudential precepts to be followed provides that the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of clear showing of abuse. Bergeron, 492 So.2d at 1196, 1203. We find no abuse of discretion in the instant case. There was sufficient evidence in the record for the trial court to conclude that the communication and interaction needed for the success of a joint custody plan cannot be effected between the parties and that Mr. Eiswirth is the parent most able to cope with Scott's day to day care during the school year.
For the foregoing reasons, the judgment of the trial court is affirmed in its entirety. Costs of this appeal are to be borne by Mrs. Eiswirth.
AFFIRMED.
LANIER, J., concurs and assigns reasons.
LANIER, Judge, concurring.
I do not agree with the holding that the requirement for written reasons for judgment of La.C.C. art. 146(E) is directory, rather than mandatory.
La.C.C. art. 146(E) provides as follows:
Any order for joint custody, or any plan of implementation effected pursuant to Paragraph A of this Article, may be modified or terminated upon the petition of one or both parents or on the court's own motion, if it is shown that the best interest of the child requires modification or termination of the order. The court shall state in its decision the reasons for modification or termination of the joint custody order if either parent opposes the modification or termination order. [Emphasis added.]
When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit. La.C.C. art. 13. The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammer rules as to the general and popular use of the words. La.C.C. art. 14. The word "shall" as used in Article 146(E) is clear and free from ambiguity. The word "shall" in its usual signification for purposes of statutory construction is mandatory. Cf. La. R.S. 1:3; La.C.C.P. art. 5053; La.C.Cr.P. art. 5; La.C.J.P. art. 4; State v. Gomez, 433 So.2d 230 (La.App. 1st Cir.1983), writs denied, 440 So.2d 730 (La.1983) and 441 So.2d 747 (La.1983).
*822 Laws upon the same subject matter must be construed with reference to each other. La.C.C. art. 17. In Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984), appears the following:
It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker.
La.C.C.P. art. 1917 provides, in pertinent part, as follows:
In all appealable contested cases, other than those tried by a jury, the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than ten days after the signing of the judgment.
Thus, in the ordinary civil nonjury case, the trial court is only required to (shall) give reasons for judgment when timely requested. "Shall", as used in this context, is obviously mandatory. However, even though a timely request for reasons is not made, a trial court has the discretion to (may) give reasons. Article 146(E) obviously was intended to be an exception to the general rule of La.C.C.P. art. 1917 because it mandates a statement of reasons (no request necessary) in the limited situation where (1) a child custody plan has been amended or terminated, and (2) either parent has opposed the amendment or termination.
In Sanders v. Department of Health & Human Resources, 388 So.2d 768, 770-771 (La.1980), the Louisiana Supreme Court observed, in pertinent part, as follows:
Statutes may be classified generally as either mandatory or directory. If mandatory, they prescribe, in addition to requiring the doing of the thing specified, the result that will follow if they are not done, whereas, if directory, their terms are limited to what is required to be done. Generally, statutory provisions that do not relate to the essence of the thing to be done, and as to which compliance is a matter of convenience rather than substance, are directory, while provisions which relate to the essence of the thing to be done, that is, matters of substance, are mandatory....
* * * * * *
The word `shall' may be given merely directory meaning in cases involving prospective action of government officials if the law's purpose is the protection of the government by guidance of its officials rather than the granting of rights to private citizens affected.... A significant consideration in determining whether a statutory requirement should be given mandatory or directory effect is a comparison of the results to which each such construction would lead.

[Emphasis added.]
The result of a mandatory construction of "shall" in Article 146(E) is set forth above. If "shall" in Article 146(E) is given a directory construction, the result is that the *823 second sentence thereof is rendered meaningless. Under his general authority, the trial judge has the discretion to give reasons (except where mandated by La.C.C.P. art. 1917). Stated another way, in the absence of the second sentence of Article 146(E), the trial judge may give reasons at his convenience (except as required by La. C.C.P. art. 1917), and if "shall" in the second sentence is given a directory construction, the law has not been changed and the second sentence is useless.
I do not agree with the majority opinion that a "lack of ... written reasons does not frustrate the ... legislative intent of the article ..." Article 146(E) is not intended only for the guidance of trial judges. Article 146(E) gives to an unsuccessful parent a right to know the reasons why a joint custody plan for his or her child was modified or terminated in a contested case. Further, such a provision gives an appellate court a meaningful insight into the manner in which the trial court exercised its much discretion in shaping the custody order. Accordingly, I feel the second sentence of Article 146(E) grants a substantive right and is not directory.
In all other respects, I agree with the opinion.
NOTES
[1] Since there are no written reasons for judgment, we must review the factual evidence in a light most favorable to the prevailing party (Mr. Eiswirth). Eubanks v. McDowell, 460 So.2d 42 (La.App. 1st Cir.1984).