ALFORD, Judge.
Nancy Gaiennie Devillier appeals from the judgment of the trial court which terminated the existing joint custody agreement affecting her minor child, Mark Stephen Devillier, Jr., and which awarded sole custody, care and control of Mark to the child’s father, Mark Stephen Devillier.
Nancy Gaiennie Devillier and Mark Stephen Devillier were granted a judgment of separation on August 10, 1987. At that time, joint custody of Mark Devillier was granted and Nancy Devillier was designated as the domiciliary parent. On October 27, 1987, Mr. Devillier filed a Rule for Change of Custody; he alleged that Mrs. Devillier was behaving in an emotionally irrational manner to such an extent that she was incapable of caring for the minor child. Mr. Devillier further requested that the trial court award him the immediate temporary care, custody and control of Mark Devillier; the ex parte order awarding Mr. Devillier temporary custody was signed on October 27, 1987. Mrs. Devillier applied for a writ to this court claiming the trial court improperly rendered the order without giving her prior notice or a hearing. Mrs. Devillier also filed a Motion for Interim Visitation in the trial court on November 29, 1987.
*554 In Devillier v. Devillier, No. CW-87-1680, slip op. (La.App. 1st Cir. November 23,1987), the writ was denied with an order to the trial court to hold a custody hearing in the matter on or before December 19, 1987. The hearing in the trial court was begun on December 3, 1987, continued on January 11, 1988, and concluded on February 18, 1988. A judgment on Mrs. Devillier’s Motion for Interim Visitation was issued on January 21, 1988 allowing Mrs. Devillier visitation from 2:00 P.M. to 4:00 P.M. every other Saturday commencing January 30, 1988, at the father’s house. The visitation order further required that during visitation, the father be present or the presence of another responsible adult male or a responsible adult female related to the father. On February 22,1988 another judgment was rendered modifying the previous allowance of visitation to alternate weekends from 6:00 P.M. on Friday to 4:00 P.M. on Sunday with the maternal grandfather present. The plan of visitation further provided that Mrs. Devillier pick up the child from the father’s home on Friday and that Mr. Devillier pick up the child at the conclusion of the visitation on Sunday. A final judgment awarding permanent custody to Mr. Devillier was rendered on March 17, 1988 and signed on April 4, 1988; visitation was continued under the plan ordered on February 22, 1988. The trial court, in that judgment, adopted for its reasons those previously set forth in connection with the January 21, 1988 judgment.
There is a rebuttable presumption under Louisiana law that joint custody is in the best interest of the child. La.Civ.Code art. 146(C). An order for joint custody may be modified or terminated on a showing that the best interest of the child requires such action. La.Civ.Code art. 146(E). In order to effect a change in the joint custody order, the moving parent must show there has occurred a change in circumstances materially affecting the welfare of the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Eiswirth v. Eiswirth, 500 So.2d 817 (La.App. 1st Cir.1986), writ denied, 502 So.2d 111 (La.1987); Crockett v. Crockett, 525 So.2d 304 (La.App. 1st Cir.1988). In addition, the moving parent bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify removing him from the environment to which he is accustomed. Eiswirtk v. Eis-wirth, 500 So.2d at 820.
The trial court in its reasons for judgment summarized the extensive evidence received during the hearings, as follows:
The evidence presented in this court to date portrays this mother as an extremely erratic and unstable individual. Her own sister, who impressed the Court very favorably, testified that she found a hidden six-gallon size bag full of twenty to thirty different types of pills in her sister’s house; that Nancy had lost control of herself; that she had committed Nancy to a state hospital; that Nancy would describe past situations and then seriously vary or deny the facts as described earlier; that she was financially irresponsible, etc. The sister further testified she loved her sister, did not relish being in Court and wanted peace for her; however, she does not desire a continuing relationship with her sister at this time.
Dr. Hypolite Landry testified that he committed Mrs. Devillier to Greenwell Springs Hospital at the request of her sister because she was emotionally and physically inappropriate. Mrs. Lejeune, the principal of her son’s school testified he had missed fourteen days from late August of 1987 to October 30, 1987 and was tardy for ten. Mrs. Devillier never would supply a doctor’s certificate. Mrs. Devillier was frequently very late picking up the boy. She refused, upon request, to give an address but did supply her with Mr. Shoemaker’s address. Mrs. Pickens, his first grade teacher, said he had a poor attendance, never made a complete week without being tardy, had no socks and wore the same clothes all during the week.
Mrs. Major, the manager of the “Residence Inn,” where Mrs. Devillier and her *555 son stayed testified she caught the son in a candy machine scam. Mrs. Devillier left the hotel owing over $1,000.00.
Mrs. Rockett, the paternal grandmother of Mrs. Devillier’s children by a previous marriage testified Mrs. Devillier called and indicated “she couldn’t handle them.” There were piles of dirty clothes in the house. Mrs. Devillier was nervous and flighty. Mrs. Rockett had paid over $6,700.00 over a one and a half year period for the children. She brought much needed groceries to the house.
Dr. Marks, Mrs. Devillier’s landlord and her witness, testified that her apartment was horrible, there was trash, garbage and mildew, fleas, dirty dishes, rotten carpet, etc. This was after Mr. Dev-illier had been gone for a few weeks or months.
The record is replete with this type of testimony. Mrs. Devillier, during the trial, would stand, walk out of the courtroom without explanation and remain absent for twenty to thirty minutes at a time. This happened not on one occasion but around six or so occassions (sic).
After hearing all of the testimony presented, the trial court determined that there was sufficient evidence to rebut the presumption in favor of joint custody and that sole custody in favor of the father was in the child’s best interest. Since the trier of fact who actually hears and observes the witnesses give live testimony is in a better position to evaluate their credibility than the appellate court, which can only read the written words of a cold record, we must accord the factual findings of the trial court great weight. Eiswirth v. Eiswirth, 500 So.2d at 821. We are unable to say that the trial court abused its discretion in changing the custody of Mark Devillier to his father, who has demonstrated a greater ability to provide a stable environment for his child.
Mrs. Devillier also contends that the visitation plan imposed by the trial court is unduly restrictive. We agree. Although it was demonstrated that Mrs. Devillier is not best suited to care for her child on a daily basis, at this time, no evidence was presented which justified denying Mrs. Devillier unsupervised visitation with her son. Requiring the presence of her father during visitation seems even more burdensome considering the apparently strained relations between Mrs. Devillier and her family, evidenced by testimony presented during the hearings. The record reflects that, despite her present emotional difficulties, Mrs. Devillier is a loving and caring mother who has never resorted to any physical abuse of her children. Mrs. Devillier’s two daughters by her first marriage testified that Mrs. Devillier had a good relationship with all of her children and that she is a good mother. Based on the record, we find the trial court abused its discretion in unduly restricting the mother’s visitation in this case. Thus, the judgment of the trial court should be modified to allow unsupervised visitation privileges to Mrs. Devillier with her son, Mark. In addition, Mrs. Dev-illier should be awarded specific visitation on alternate major holidays, as well as, during the summer months. Accordingly, we reverse that portion of the trial court judgment fixing visitation and remand to the trial court for implementation of a visitation plan consistent with the views expressed in this opinion.
For the reasons assigned in the foregoing opinion, the judgment of the trial court is affirmed in part, reversed in part, and remanded, with all costs of this appeal to be borne by the appellant herein.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.